UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:11-cv-03444 |
| TAQUERIA RODEO DE JALISCO, | § § § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support ("Motion"). (Doc. No. 32.) After considering the Motion, all responses and replies, and the applicable law, the Court concludes that the Motion should be **DENIED.**

### I. BACKGROUND

Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") filed its action alleging that Taqueria Rodeo de Jalisco ("Defendant" or "the Restaurant") unlawfully discriminated against a former employee, Charging Party Blanca Esparza ("Esparza"), as well as other female employees of Defendant. Plaintiff alleges that Defendant violated the Pregnancy Discrimination Act, sections 701(k) and 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) and 2000e-2(a)(1), by suspending or terminating Esparza's employment because of her pregnancy. (Doc. No. 1.)

Defendant is a family-run Tex-Mex restaurant jointly managed by Guadalupe Valadez ("G. Valadez") and Jose Valadez ("J. Valadez"). G. Valadez, who was the manager

1

of the Restaurant until 2011, hired Esparza to work as a busser for Defendant in 2006. (Doc. No. 32, at 6; Esparza Dep., 9:15-23, May 25, 2012.) At the time of the incidents at issue, G. Valadez was a manager with "full decision-making authority over employees." (J. Valadez Dep. 17:18-21; 75:7-11, September 12, 2012). G. Valadez handled the hiring, scheduling, and disciplining of employees as well as employee payroll. (G. Valadez Dep. at 65:19-22, September 11, 2012; J. Valadez Dep. 45:14-19; Gonzalez Dep. 41:15-22; 42:7-10, November 28, 2012; De la O Dep. 6:13-20; 11:6-7; 13:13-14; 14:21-22; 29:11-16, November 28, 2012).

Sometime around April 2009, Esparza became pregnant (Esparza Dep. 18:20-23.) Throughout her employment and pregnancy, she continued to work on the same schedule, six days a week. (*See id*. 10:12-17; 11:17-12:16; 20:5-8). During the course of her pregnancy, Esparza had no medical restrictions that affected or would have affected her ability to carry out her work duties. (Doc. No. 40-10, [Charge of Discrimination].) She continued working as a busser until October 2009. (*Id.* at 15:8-13.) Plaintiff and Defendant disagree about whether Esparza left voluntarily or was asked to leave because of her pregnancy. Esparza gave birth to her child in late December, and in February 2010, Esparza sought to be reemployed with the Restaurant. However, she has not been reemployed to date.

The Charge of Discrimination which Esparza filed on April 14, 2010, alleged that G. Valadez discriminated against her on the basis of her sex and pregnancy in violation of Title VII when he forced her out of the workplace because of her pregnancy. (Doc. No. 40-10.) During the course of the EEOC investigation of Esparza's Charge, EEOC Investigator Nelly Salazar (then known as Nelly Gomez) called a meeting of the parties at the EEOC offices in June 2010 to discuss the allegations. Salazar is a bilingual Investigator, who speaks Spanish and English fluently. (Doc. No. 40-7, at ¶ 2). In addition to Salazar, in attendance at this meeting were G. Valadez, on behalf of Defendant, Esparza, and two other Spanish-English

bilingual EEOC Investigators, Leticia Flores and Edith Banda, who served as observers and note-takers. (*Id.* at ¶ 6; Doc. No. 40-8, at ¶ 7; Doc. No. 40-9, at ¶ 7.) At the meeting, G. Valadez made several admissions to the EEOC. After completing the investigation, the EEOC filed this action.

## II. LEGAL STANDARD

Summary judgment is warranted where a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

## III. ANALYSIS

Defendant raises three main issues in its Motion: (1) Defendant was not an employer because of the employee-numerosity requirement, as defined in 2000e-5(f)(1), (3), and (5) of

3

Title VII; (2) Defendant subjected Esparza to unlawful sex discrimination on the basis of pregnancy; and (3) other female employees were subjected to discrimination due to pregnancy.

### A. Employee-Numerosity Requirement

Defendant argues that it was not an "employer" as defined by Title VII. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has *fifteen or more employees* each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. § 2000e(b) (emphasis added). The Supreme Court has found that the employee-numerosity requirement of Title VII is a question of the merits rather than of jurisdiction. See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). In *Arbaugh*, the Court articulated that the employee-numerosity requirement is an element of a plaintiff's claim for relief, not a jurisdictional issue.

Defendant states that he never had more than fifteen employees—and in his deposition stated that he maintained ten employees in 2008, eight in 2009, and eight in 2010. (G. Valadez Dep. 79:1-18; Doc. No. 48-7 [Defendant's Response to Interrogatories no. 14], Doc. No. 48-8 [Defendant's Response to Interrogatories no. 28]). Defendant also attaches an affidavit from Alba Avendallo, who has done bookkeeping and employee payroll for the Defendants for over five years (Doc. No. 32-5.) Ms. Avendallo's affidavit provides a different employee count, but one that is still below the requisite fifteen employees: eight employees in 2008, six employees in 2009, and six employees in 2010. *Id.* Ms. Avendallo states that to her knowledge, "Taqueria Rodeo de Jalisco has not have [*sic*] more employees than what I show in my records." *Id.*

However, Plaintiff provides evidence, including admissions by G. Valadez, that not all employees were on the payroll. At the EEOC investigation meeting, G. Valadez admitted

4

that Defendant employed "20 employees" (Doc. No. 40-7, at ¶ 9; Doc. No. 40-8, at ¶ 9; Doc. No. 40-9, at ¶ 9.) This discrepancy between the number of employees on the payroll and those *actually* employed by Defendant is due to the manner of payment: some employees are paid by check (and are on the payroll), while others are paid by cash. (G. Valadez Dep. 86:15-18; 155:18-23.) G. Valadez admits that there is no documentation to show that certain employees are paid in cash, and these individuals are not listed on the payroll records that are presented to the State and the federal government *Id.*[1] The three current and former employees deposed in this case—Esparza, Blandina Gonzalez, and Carmen de la O—stated that they were all paid in cash, and do not appear on the payroll. (Doc. No. 32-5; Esparza Dep. 25:7-8; Gonzalez Dep. 43:5-8; De la O Dep 9:11-17; 15:3-13; 16:12-15, November 28, 2012.) The fact that the Restaurant may have employed more than fifteen individuals is corroborated by Esparza's deposition testimony as well. Esparza names in her deposition twenty-two employees, many of whom she knew only by first name, who worked with her at the restaurant. (Esparza Dep. 21:2-13.) The Court cannot rely on the payroll records because Defendant admits they are incomplete in capturing the total number of employees. Given that there is a genuine fact dispute regarding the number of employees who were working at the Restaurant, the Court cannot grant Defendant summary judgment on this issue.

### B. Esparza's Claim of Sex Discrimination On the Basis of Pregnancy

---

[1] The Court notes that Mr. Valadez did not state that he hired individuals with no documentation, but rather that individuals who were paid by cash did not provide papers when requested. (Valadez Dep. 82:14-16.). But even if these individuals were illegal alien employees, this would not mean that such employees are not entitled to protections under Title VII. Although this issue has not been considered by the Fifth Circuit, the Eastern District of California confronted this issue in a case brought by the EEOC. In *E.E.O.C. v. Tortilleria La Mejor*, 758 F. Supp. 585, 587 (E.D. Cal. 1991), the court found that there was nothing in the text of Title VII to indicate that undocumented illegal employees would not be covered by Title VII protections. "Congress clearly communicated its intent to cover aliens working in this country by prohibiting discrimination against 'any individual" *Id.* at 590. *See also E.E.O.C. v. Switching Sys. Div. of Rockwell Int'l Corp.,* 783 F. Supp. 369, 374 (N.D. Ill. 1992).

### 1. Direct Evidence of Discrimination

Defendant argues that Plaintiff has not proven a prima facie case of pregnancy discrimination. However, the *McDonnell Douglas* framework, which requires a prima facie showing by plaintiff, is used only when the plaintiff is relying on indirect evidence. See *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984) (citing *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)) (stating that the analytical framework for cases involving only indirect evidence "is inapplicable where the plaintiff presents direct evidence of discrimination").

Plaintiff provides both direct and indirect evidence of pregnancy discrimination, and the Court will consider the direct evidence first. The existence of direct and material evidence of discrimination means that judgment as a matter of law for a defendant is not appropriate. *Vance v. Union Planters Corp.*, 209 F.3d 438, 442 (5th Cir. 2000). "Direct evidence is evidence that, if believed, proves the fact [of intentional discrimination] without inference or presumption." *Portis v. First Nat. Bank of New Albany*, 34 F.3d 325, 328-29 (5th Cir. 1994) (quoting *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). "[D]irect evidence includes any statement or written document showing a discriminatory motive on its face." *Portis*, 34 F.3d at 329.

At the EEOC's Investigation, G. Valadez made oral and handwritten statements that he told Esparza that for her safety and "security" she could not work after the seventh month of her pregnancy. (Doc. No. 40-10) G. Valadez admitted that he told Esparza to stop working because he "was trying to protect [her] from falling, slipping, any dangerous thing, not because [he] didn't want her there, but for her health." (Doc. No. 40-7 at ¶¶ 10, 14; Doc. No. 40-8 at ¶¶ 10, 13; Doc. No. 40-9 at ¶¶ 10, 12). G. Valadez further admitted that he later told another seven-month pregnant employee, Patricia Pinales, to stop working, at least until after

6

she gave birth, because he believed "she needed to ... for her own health." (Doc. No. 40-7 at ¶ 12; Doc. No. 40-8 at ¶12; Doc. No. 40-9 at ¶ 11).

The Fifth Circuit has held that such remarks "may serve as sufficient evidence of discrimination if the offered comments are: 1) pregnancy related; 2) proximate in time to the termination; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608-09 (5th Cir. 1996) (citing *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir.1996); *see Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000)* ("In order for a [protected class-]based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [the employee's protected class] was a determinative factor in the decision to terminate the employee.") Statements which request that women leave their jobs when pregnant are necessarily discriminatory because "decisions about the welfare of future children must be left to the parents who conceive, bear, support, and raise them rather than to the employers who hire those parents." *International Union, UAW v. Johnson Controls*, 499 U.S. 187, 206-7 (1991).

Defendant makes three arguments to respond to Plaintiff's evidence of Valadez's discriminatory statements during the fact-finding conference. First, Defendant argues that the statements G. Valadez made should be disregarded because the EEOC did not provide him a certified interpreter or inform him that he had the right to have an attorney present during the fact-finding conference.[2] Defendant cites no law for the proposition that the EEOC must inform the investigated individual of the right to counsel or provide him with a certified

---

[2] The underlying authority for a fact-finding conference is the EEOC's statutory authority to require persons to appear, produce evidence, and testify. See generally 42 U.S.C. § 2000e *et al*.; EEOC Compliance Manual § 14.9 (Doc. No. 55-2.)

7

interpreter during the fact-finding conference. Defendant refers in its Reply to Section 23.7 of the EEOC Compliance Manual, but that section says nothing about a right to counsel or provision of a certified interpreter. Rather, it instructs the investigator as to what she should say during the "introductory statement" of an interview. In this case, Ms. Salazar, the lead investigator, made the introductory statement, as instructed by the Manual. (Doc. No. 40-9, at 5 [Notes of Investigator Leticia Flores].) Furthermore, G. Valadez was notified of his right to have counsel present during the fact-finding conference. (Doc. No. 40-7, at ¶ 6 [Salazar Aff.] (stating, "Prior to the conference, I advised G. Valadez by telephone that he was free to bring an attorney to represent him and the restaurant, but G. Valadez declined.")) Defendant also argues that G. Valadez was confused and does not understand English, and should have been provided a certified interpreter. However, because G. Valadez and Esparza made it clear they only speak Spanish, the fact-finding conference was held entirely in Spanish. (Doc. No. 55-1, at ¶ 7). The three investigators are fully bilingual and fluent in both Spanish and English; in fact, Investigator Banda's official title is Bilingual Investigator (Doc. No. 40-8, at ¶ 2.)

Moreover, the Compliance Manual, which Defendant refers to in its Motion, confers no rights on parties nor imposes any requirements on staff. See *Hall v. E.E.O.C.*, 456 F.Supp. 695, 702 (D.C. Cal. 1978) ("the Manual does not determine any rights or obligations of parties before the EEOC."); see also infra at § C)). The Compliance Manual is not a source of law. "The EEOC need not follow the procedures outlined in its compliance manual in every case. The manual's provisions are discretionary in this respect." *Equal Employment Opportunity Commission v. University of Pittsburgh*, 643 F.2d 983, 986, n.4 (3rd Cir. 1981); s*ee also Sunbeam Appliance Co. v. Kelly*, 532 F.Supp. 96, 99 (D.C. Ill. 1982) ("[The] procedures set forth in the EEOC Compliance Manual are internal guidelines for use of the agency.") The Court recognizes that the EEOC fact-finding conference is "an informal

investigative forum, not an adversarial process." (Doc. No. 55-2, at § 14.10) The underlying authority for a Fact-Finding Conference is the EEOC's statutory authority to require persons to appear, produce evidence, and testify. *See generally* 42 U.S.C. § 2000e et al.; EEOC Compliance Manual § 14.9 (Doc. No. 55-2.) Because it is an informal investigative forum, an EEOC fact-finding conference is not subject to the Court Interpreter's Act or the other requirements that typically govern proceedings in federal court.

The Court finds that the EEOC Compliance Manual does not legally compel the EEOC to inform Defendant of the right to counsel or to provide a certified interpreter during the EEOC fact-finding conference. However, the Court finds that, in this case, the EEOC followed their own procedures and provided Valadez an opportunity to obtain counsel and conducted the conference in Spanish, for his benefit. Thus, the Court rejects the argument that statements made during the fact-finding conference should not be considered.

Second, Defendant argues that G. Valadez's statements fail to rise to the level intended in *Brown v. CSC Logic, Inc* because they were vague and not made over a lengthy period of time (Doc. No. 32, at 12.) The Court finds that the statements that Esparza should not work after her seventh month of pregnancy are sufficiently specific for a jury to find that they are direct evidence of discrimination, even if such statements were made only once or twice. G. Valadez's statements are specifically about Esparza's pregnancy, and his statements make it clear that he asked her to leave her job when she was seven months pregnant.

Finally, Defendant argues that Esparza contradicted herself in her deposition. Esparza alleges that G. Valadez told her "it was time for [her] to go already and rest because of [her] pregnancy." (Esparza Dep. 15:10-13; 71:15-23.) Additionally, G. Valadez told her she had to stop working "because he was already seeing [her] tired, that [her] stomach was already big,

9

and for [her] own good...it was time for [her] to already go and rest." (Esparza Dep. 16:6-19.) However, the Court finds that Esparza's slightly different wording to describe G. Valadez's statement to her insignificant. Regardless, any difference in wording would go to Esparza's credibility, an issue for the trier of fact. *United States v. Kossa*, 562 F.2d 959, 962 (5th Cir. 1977).

Defendant then argues that, regardless of statements made during the EEOC fact-finding conference, G. Valadez did not make such statements to Plaintiff. According to G. Valadez, Esparza requested a break from work. G. Valadez told her that there was no problem in taking off the time she needed, and that her job would be waiting for her when she returned. (Valadez Dep. 53:7-12.) G. Valadez also asserts that Esparza performed her job poorly, stole tips for the waitresses, and refused to work at her scheduled times. (G. Valadez Dep. 53:14-24; 58:4-15.) Plaintiff provides evidence contradicting these claims, demonstrating that she received a raise during her employment and was not written up, investigated, or fired. (Esparza 11:3-14; G. Valadez Dep. 97: 4-15; 101:16-19; 104:1-6; 104:12-19; 106:5-10; J. Valadez Dep. at 48:7-10; 75:23-76:5, September 12, 2012). There is a genuine issue of material fact as to whether it was Esparza that requested a break from her job because of her pregnancy, or G. Valadez that asked her to leave because of her pregnancy and job performance.

Based on Esparza's deposition testimony and G. Valadez's statements during the EEOC's fact-finding investigation, the Court finds that a reasonable jury could conclude, without any inferences or presumptions, that the employee's protected class was a determinative factor in the decision to terminate the employee. Thus, the Court finds that summary judgment is not appropriate with regard to Plaintiff's direct discrimination claim.

### 2. Circumstantial Evidence of Discrimination

Similarly, the Court finds that it cannot grant summary judgment because the circumstantial evidence of pregnancy discrimination creates issues of material fact that preclude judgment as a matter of law. Indirect discrimination claims are governed by the *McDonnell Douglas* standard. Under this standard, the EEOC must first establish a prima facie claim of pregnancy discrimination that Esparza is (1) a member of a protected group (pregnant women); (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated, non-pregnant employees, or was replaced by a person who was not a member of her protected class. See *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007).

Defendant does not contest the first two factors, that Esparza was pregnant and was qualified for her position as a busser. Defendant maintains that Esparza was never terminated, was not "treated differently than anyone else," and could return to her job at any time (Doc. No. 32, at 12.) Esparza tried to return to work four months after giving birth, in February. According to Defendant, she showed up without informing anyone and demanded to work that night. (Doc. No. 48-14, ¶ 4.) G. Valadez told her he would put the schedule together again and add her to the schedule. *Id.* Defendant alleges that Esparza became very upset and never came back to the restaurant. *Id.*

However, Esparza's deposition testimony creates a fact issue, since she alleges G. Valadez made statements terminating her because of her pregnancy. (Esparza Dep. 16:9-19; 71:15-23; 71:1-6.) Esparza agrees that she appeared one day in February at the Restaurant without informing Defendant. (Esparza Dep. 57:23-25.) However, Esparza states that she did not demand to work that night, but wished G. Valadez to tell her when she could return to work. (Esparza Dep. 58:15-18.) At that time, she was told she had been replaced by a man

named Miguel, but was told when there was a job opportunity, G. Valadez would call her to show up to work. (Esparza Dep. 59:4-7.) Esparza states that Valadez never called. (Esparza Dep. 59:18-21.) Additionally, during the EEOC investigation, G. Valadez told the EEOC that he had in fact hired another male, Juan, to work as a busser after Miguel left, and "did not think of calling [Esparza]." (Doc. No. 40-7 at ¶ 11; Doc. No. 40-8 at ¶11; Doc. No. 40-9 at ¶ 11).

Defendant argues that Plaintiff cannot establish a prima facie case. However, Plaintiff alleges facts that establish that Esparza suffered an adverse employment action and was treated less favorably than similarly situated, non-pregnant individuals. Thus, the Court denies Defendant summary judgment on the indirect discrimination claim.

### C. Sexual Discrimination of Other Female Employees

Plaintiff also alleges that other female employees were subjected to unlawful sexual discrimination due to their respective pregnancies. Defendant argues that the only other pregnant women employed by the Restaurant, Blandina Gonzalez, Patricia Pinales and Carmen De la O, never made a pregnancy discrimination claim against Defendant. Defendant has attached affidavits from the three women as summary judgment evidence in which the women state that they requested and were given time off, they returned to work with no issues, and they were never treated differently because of their pregnancy.

Before the Court is Plaintiff's Objections and Motion to Strike Gonzalez and De la O's affidavits. Plaintiff makes four arguments: 1) there is no indication the affidavits were translated from or into Spanish by a competent translator, 2) the two women did not know who had prepared and supplied the information for the affidavits, 3) the affidavits contain errors, and 4) the depositions were not notarized in the women's presence.

Both Blandina Gonzalez and Carmen de la O are non-native speakers of English. Both testified in their depositions that they speak and read little to no English. (Gonzalez Dep. 62:23-24; De la O Dep. at 31:8-15). Despite their lack of proficiency in the English language, Defendant produced their affidavits in English with no indication that they were ever translated from or into Spanish, or translated by a competent and qualified translator. (Doc No. 32-4, at 8 (Gonzalez Aff.), at 14 (De la O Aff.)). The Court is concerned that the affidavits were not properly authenticated and translated to Gonzalez and De La O. To be admissible evidence, witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator. See Fed. R. Evid. 604 and 901. Gonzalez states in her deposition that her brother, rather than a certified translator, translated her affidavit for her at home. However, Gonzalez admitted that her affidavit had errors that she had been unaware of when it was translated to her, namely the spelling of her name, the date of her pregnancy, and when she requested leave from her job. (Gonzalez Dep. 65:4-6, 18-22, November 28, 2012.) De la O testified in her deposition that defense counsel's paralegal translated and notarized her affidavit for her. (De la O Dep. 35:1-10, November 28, 2012.) However, the De la O Affidavit does not identify who translated the content of the affidavit, nor does it provide any information about the qualifications of the interpreter/translator used to communicate with De la O. De la O's affidavit also contains a significant error—her affidavit identifies her name as Blandina Gonzalez. (De La O Dep. 36:2-5.)

In *Cruz v. Aramark Service, Inc.*, 213 F. App'x 329, 334 (5th Cir. 2007), the court found that a translator may create an additional layer of inadmissible hearsay depending on the following four factors: 1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill;

13

and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. *See also United States v. Martinez-Gaytan,* 213 F.3d 890, 892 (5th Cir.2000). In *Cruz,* the Fifth Circuit upheld the striking of an affidavit because it was plaintiff's counsel who had translated the statement for plaintiff. The court stated that "more importantly, the court has no indication of his skill as a translator, other than his own self-supporting claims." *Id.* at 334.

In this case, Gonzalez's affidavit was translated by her brother—whose qualifications and language skills are unknown. De la O's affidavit was translated by Defendant's paralegal and notary, an individual supplied by Defendant, whose qualifications are unknown and who has a potential motive to mislead. See *Gonzalez v. Lopez,* Civ. No. 3:07-cv-593-M, 2008 U.S. Dist. LEXIS 109653, *15-17 (N.D. Tex., Jan. 23, 2008) (striking declarations that failed to comply with *Cruz* standards); *Xavier v. Belfour USA, Grp. Inc.*, Civ. No. 06-491c/w06-7084, 2008 U.S. Dist. LEXIS 108743, *5 (E.D. La, Sept.22, 2008) (striking affidavits for same reason); *Diaz v. Carballo*, Civ. No. 3:05-CV-2084-G, 2007 U.S. Dist. LEXIS 76039, *10-11 (N.D. Tex Oct. 12, 2007) (sustaining objection to Spanish-to-English affidavit because it lacked information regarding the translator's identity, qualifications, and skills). Additionally, Plaintiff's deposition of De la O raises a red flag as to whether she understood what she was signing. De la O stated that both G. Valadez and J. Valadez told her that she had to go to defense counsel's office "to sign something for [her] for [her] job, and because of the time [she] had taken off because of [her] baby." (De la O Dep. 32:21-33:9.)

Plaintiff also argues that the affidavits were unsworn and unverified. Specifically, Gonzalez admitted that her deposition was not sworn or subscribed before a notary. Gonzalez could not identify the notary's signature below her own signature. (Gonzalez Dep. 66:10-20.) An unsworn affidavit is not competent summary judgment evidence. *Nissho-Iwai Am. Corp.*

*v. Kline*, 845 F.2d 1300 (5th Cir. 1988) (affidavit that was not sworn and did not state its contents were true and correct under penalty of perjury had to be disregarded as summary judgment proof); *Massay v. Fed. Corr. Inst.-Texarkana*, 243 F. App'x 871, 873 (5th Cir. 2007) (affidavit was not competent summary judgment evidence since it was not notarized and made under penalty of perjury). De la O's deposition does not suffer from the same defects, since she swore, in front of the notary, that she was stating facts that were true and correct. (De la O Dep. 35:11-17.) However, De la O's deposition was not signed by the notary in front of her. (*Id.* 36:17-19.) Regardless, the Court finds the lack of competent translation sufficient to strike the two affidavits.

Even if De la O and Gonzalez's affidavits were considered, Plaintiff raises a genuine issue of material fact that forecloses a finding of summary judgment for Defendant. Valadez admitted to Plaintiff that he told Pinales to stop working when she was seven months pregnant, just as he told Esparza she could no longer work at the restaurant. (Doc. No. 40-7 at ¶ 12; Doc. No. 40-8 at ¶11; Doc. No. 40-9 at ¶ 12). Additionally, De la O's deposition testimony alludes to a discriminatory policy at the Restaurant. De la O states that she understood she was "supposed to take time off" when pregnant, that it was a kind of "policy" of the restaurant. (De la O. Dep. 23:25-24:16.) These two pieces of evidence raise a genuine issue of material fact that other women experienced pregnancy discrimination while employed at the Restaurant.

### IV. CONCLUSION

For the reasons explained above, Defendant's Motion (Doc. No. 32) is **DENIED.** Furthermore, Plaintiff's Objections and Motion to Strike Gonzalez and De la O's affidavits (Doc. No. 41) is **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 19th day of December, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE